Exhibit B

Supplemental Declaration of William Langin

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MINARD RUN OIL COMPANY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:09-cv-00125-SJM |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES FOREST SERVICE, ) | |
| *et al.*, ) | *Electronically filed* |
| ) | |
| Defendants. ) | |

**SUPPLEMENTAL DECLARATION OF WILLIAM LANGIN**

I, William Langin, hereby declare as follows:

1. My name is William Langin and I am the Exploration Manager for SWEPI LP's ("SWEPI's") assets in Shell Appalachia. SWEPI is a member of PIOGA. "Shell Appalachia" refers to all of Shell Oil Company's assets in the Appalachian region, which currently consists of SWEPI's Appalachian assets. I became Exploration Manager for Shell Appalachia on August 1, 2010, but I have worked for Shell Oil Company since 2003. I started as a team geophysicist with the Gulf of Mexico Exploration Team that oversaw the drilling of two exploration wells in deepwater Gulf of Mexico. In 2007, I became a lead geophysicist for the drilling of two offshore wells in the Santos Basin, Brazil. From 2009 until August 1, 2010, I served as the business advisor to Shell Oil Company's Executive Vice President of Exploration. I was born in Wilkes-Barre, Pennsylvania. I have a Bachelor of Arts degree in geology from Princeton University, and Ph.D. in Geophysics from Cornell University.

2. In March 2011, SWEPI notified the U.S. Forest Service of its desire to use groundwater within the Allegheny National Forest (ANF) for its hydraulic fracturing operations on Warrants 3124 and 3781. Through March and April 2011, SWEPI representatives, including Marty Dahler and me, met with the Forest Service to discuss SWEPI's proposal to drill test groundwater wells to sample and monitor water quality on Warrants 3124 and 3781. At an April 19, 2011 meeting, District Ranger Robert Fallon stated that the Forest Service would not agree to SWEPI proceeding with this proposal unless SWEPI provided further documentation of its title to Warrants 3124 and 3781. Accordingly, on April 29, 2011, Marty Dahler sent District Ranger Fallon title opinions to Warrants 3124 and 3781. In that transmission, Mr. Dahler affirmed: "It is [SWEPI's] intent to move forward as quickly as possible to drill the test water wells." *See* Dahler Decl. Ex. 8.

3. On June 6, 2011, the Forest Service issued a letter notifying SWEPI that any use of ANF groundwater by SWEPI would, among other things, be considered a violation of law. On October 7, 2011, the Forest Service issued a second letter that withdrew and replaced the letter from June 6, 2011. The October letter did not indicate, however, whether, in the Forest Service's view, SWEPI could proceed with installing and testing groundwater wells at Warrants 3124 or 3781.

4. On October 14, 2011, I made a telephone call to Acting ANF Forest Supervisor Tracy Parker seeking clarification as to the Forest Service's position on whether SWEPI could proceed with installing and testing its proposed groundwater wells at Warrants 3124 and 3781, as well as at future sites. Mr. Parker indicated that while he believed SWEPI could proceed, he needed to confirm that and would get back to me early the following week with the Forest Service's formal position. I asked if he would be able to confirm the answer within seven days, and he said that he would. At the time that I executed this declaration, Mr. Parker had not yet responded.

5. On October 27, 2011, I sent the attached letter, Exhibit 1, to Mr. Parker by electronic mail and U.S. mail, responding to his October 7, 2011 letter to me and our discussions of October 14, 2011.

6. On Friday, October 21, 2011 SWEPI began hydraulically fracturing its Marcellus Shale natural gas well on Warrant 3124. The well on Warrant 3124 is 50% owned by SWEPI and 50% owned by the Pennsylvania General Energy Company, L.L.C. (PGE). For the hydraulic fracturing operation at this site, SWEPI trucked in water purchased from municipal water sources. SWEPI also trucked in water from a PGE river source in Port Allegheny. All of the water sources are in an approved Pennsylvania Department of Environmental Protection water management plan. The hydraulic fracturing was completed on October 31, 2011.

7. Because of the Forest Service's June 6, 2011 letter and its subsequent failure to clarify its position on SWEPI's planned use of groundwater, SWEPI has incurred over $3 million dollars in extra costs to hydraulically fracture its two gas wells in the ANF in 2011. Because SWEPI was not able to use the groundwater on Warrant 3781, SWEPI had to truck in water from municipal sources to hydraulically fracture the well on that site. The resulting inefficiency costs and the costs of purchasing the water and trucking the water to the first site in August 2011 were approximately $1.5 million. SWEPI and PGE then incurred similar costs throughout October to truck in water for the hydraulic fracture of the natural gas well on Warrant 3124. SWEPI will continue to incur such costs on future horizontal wells drilled from those same two well pads, and other planned locations in the coming months and year ahead, as long as the Forest Service continues to impede SWEPI's use of groundwater.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
William Langin

Dated: November 2, 2011

Exhibit 1
to

Supplemental Declaration of William Langin



Shell Exploration & Production Company
William R. Langin
US Appalachia Exploration Manager
Upstream Americas
301 Brush Creek Road
Warrendale, PA 15086
Tel +1 724-778-9260
Email: William.Langin@Shell.com

October 27, 2011

Mr. Tracy Parker
Acting Forest Supervisor
U.S. Forest Service
Allegheny National Forest
4 Farm Colony Drive
Warren, PA 16365

RE:   **Response to October 7, 2011 Letter**

Dear Mr. Parker,

I have received your letter dated October 7, 2011. At the outset, I would like to emphasize, that Shell Western Exploration and Production Company (SWEPI-LP) has always desired to develop and maintain a positive working relationship with the U.S. Forest Service. We seek to further the level of cooperation between those involved in developing, and those managing, the resources within the ANF.

SWEPI-LP appreciates the ANF's retraction of the June 6, 2011 letter. As we have discussed with you and others since March of 2011, when feasible, it is SWEPI-LP's intent to utilize the groundwater to explore and develop its resources in the ANF. As we have explained since the spring of 2011, the primary benefit of utilizing groundwater is to: 1) eliminate traffic associated with water hauling, 2) reduce potential safety incidents associated with higher volume use of the roads, 3) reduce road degradation from heavy equipment, and 4) reduce forest impacts and other indirect effects (e.g., noise, dust, etc.) within the ANF. Clearly, utilizing water sources near well sites has multiple substantial benefits. As part of the current consultation process, SWEPI-LP will provide appropriate advance notice to the Forest Service regarding whether groundwater may potentially be used in the development of SWEPI-LPs resources in the ANF.

As you know, the groundwater monitoring/test well locations that we proposed by letter on July 14, 2011, had been the subject of discussions between the Forest Service and SWEPI-LP and our consultants at Moody and Associates since March 2011. Yet, we have had no response from the Forest Service expressing its views on those specific locations for the monitoring/test wells. When you and I spoke on October 14, 2011, you indicated that while you believed that SWEPI-LP could proceed with installing and testing the groundwater wells, not only at these locations but also at locations planned for 2012 activities, you needed to confirm that was the Forest Service's official position and would get back to me within 7 days.

As you know from our prior discussions, after the initial test groundwater wells are installed, an evaluation of the groundwater resource will commence using SWEPI-LP staff and contract hydrogeologists. Only after thorough evaluation of the testing results, the information will be compiled and submitted in a Water Management Plan, or an amendment to an existing plan, to the Pennsylvania Department of Environmental Protection (PADEP). Once final approval is received from PADEP, the ANF will be notified. All water withdrawal activities will take place in compliance with permit Conditions of Approval from PADEP. While all the PADEP documents are publically available, in order to facilitate the Forest Service's receipt of the submittals and approvals, SWEPI-LP will endeavor to provide the Forest Service with copies of those documents for its projects. However, none of these steps can commence until the groundwater monitoring/test wells are installed at specific locations and the necessary tests are carried out and the results are submitted to the PADEP, and these preliminary steps do not require PADEP approval.

Again, we always have sought a cooperative working relationship with the Forest Service in the ANF. Please don't hesitate to contact me at (724) 778-9260 with any questions you might have.

Sincerely,

William R. Langin
US Appalachia Exploration Manager

Cc:  Kim Kaal
     Chris Gonsalves
     Joe'l Mafrige
     Tim McCrum