IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MINARD RUN OIL COMPANY, et al.,    )
          Plaintiffs          )
                              )
    v.                      )   CIVIL ACTION NO. 09-125 ERIE
                              )
UNITED STATES FOREST SERVICE,      )
et al.,                            )
          Defendants          )

STATUS CONFERENCE

Proceedings held before the HONORABLE SEAN J. McLAUGHLIN, U.S. District Judge, in Judge's Chambers, U.S. Courthouse, Erie, Pennsylvania, on Tuesday, January 24, 2012.

- - -

Ronald J. Bench, RMR - Official Court Reporter

```
 1  APPEARANCES:

 2              MATTHEW L. WOLFORD, Esquire, (via Phone),
                appearing on behalf of Plaintiffs Minard Run Oil
 3              Company, et al.

 4              R. TIMOTHY McCRUM, Esquire, (via Phone),
                appearing on behalf of Plaintiffs Minard Run Oil
 5              Company, et al.

 6              J. MICHAEL KLISE, Esquire, (via Phone),
                appearing on behalf of Plaintiffs Minard Run Oil
 7              Company, et al.

 8              STEVEN J. LECHNER, Esquire, (via Phone),
                appearing on behalf of Plaintiffs Minard Run Oil
 9              Company, et al.

10              RUTH ANN STOREY, Esquire, (via Phone), U.S.
                Department of Justice, appearing on behalf of
11              Defendants United States Forest Service, et al.

12              SARA C. PORSIA, Esquire, (via Phone), U.S.
                Department of Justice, appearing on behalf of
13              Defendants United States Forest Service, et al.

14              MARIANNE G. DUGAN, Esquire, (via Phone),
                appearing on behalf of Defendants Forest Service
15              Employees for Environmental Ethics, et al.

16

17

18                            - - -

19

20

21

22

23

24

25
```

3

<u>P R O C E E D I N G S</u>

    (Whereupon, the proceedings began at 9:00 a.m., on Tuesday, January 24, 2012, in Judge's Chambers.)

    THE COURT: This is Judge McLaughlin, who do I have on the line?

    MR. McCRUM: Good morning, your Honor, Tim McCrum for the plaintiffs, Pennsylvania Independent Oil and Gas Association, along with Michael Klise.

    MR. WOLFORD: Your Honor, Matthew Wolford, also for the plaintiffs.

    MR. LECHNER: Steve Lechner for the plaintiffs.

    MS. STOREY: Ruth Ann Storey and Sara Porsia for the federal defendants.

    MS. DUGAN: Marianne Dugan for the other defendants.

    THE COURT: I just wanted to take a minute or two this morning, I know we still have the side issue of the contempt motion, which we're working on. Now that the Third Circuit denied the petition for rehearing en banc, I just want to look down the road a little bit and see where we're going with this case. In terms of an ultimate procedural resolution of this case, just to throw this out on the table and get some input from you folks. I mean, do you all agree that procedurally what should happen here, should the preliminary

1  injunction be made permanent, how do you bring the curtain down
2  on this thing, Mr. McCrum?
3              MR. McCRUM:  Your Honor, we would envision a motion
4  for summary judgment, with the purpose of making the
5  preliminary injunction permanent.  And we would propose to file
6  that, we would suggest reasonably soon after the court's
7  disposition of the pending contempt motion.
8              THE COURT:  When you say summary judgment, a motion
9  for summary judgment, what do you envision substantively within
10 that motion?
11             MR. McCRUM:  We would envision the preliminary
12 injunction order, which addressed the merits of the case, but
13 from a likelihood of success standpoint.  We would envision a
14 summary judgment motion addressing the merits of the case.  The
15 same issues that were addressed in the preliminary injunction
16 motion, but addressing them in a manner that the court would
17 rule finally on those merits issues.
18             THE COURT:  How do you see it, Ms. Storey?
19             MS. STOREY:  Your Honor, we don't really see the
20 need for further substantive briefing here.
21             THE COURT:  What's in dispute, that's what I don't
22 understand?
23             MS. STOREY:  Our preference would be for the court
24 to convert the decision to a final decision.  But we would like
25 an opportunity to brief remedy.

1        THE COURT:  What do you mean brief remedy?
2        MS. STOREY:  We would like to -- provide our views
3   to the court of what the appropriate remedy would be.  We do
4   not believe it would be a permanent injunction.  We think the
5   court should vacate the Settlement Agreement and moratorium and
6   decline to enter a permanent injunction.
7        THE COURT:  Obviously, I don't have to resolve that
8   now.  Short of a permanent injunction, what type of creature is
9   there between a preliminary and a permanent?
10       MS. STOREY:  Your Honor, we think the issue here was
11  the Settlement Agreement.  We believe the court could vacate
12  the Settlement Agreement without permanently enjoining the
13  Forest Service on any other matters.
14       THE COURT:  Then not surprisingly in this case we
15  have yet at the end a divergence of view on how to finally wrap
16  this up, it appears to me.  What do you have to say about this,
17  Mr. McCrum?
18       MR. McCRUM:  Your Honor, we would welcome the
19  government's suggestion that settlement should be vacated as
20  part of the final relief.  And convert the permanent injunction
21  as a final judgment, we welcome that part of the government's
22  proposal.  We would see the need for some continuing permanent
23  injunctive relief.
24       THE COURT:  Let me make this suggestion.  And, quite
25  frankly, an additional reason for trying to get this thing

1   resolved as expeditiously as we all can reasonably do it, is
2   this case is aging, it's becoming one of my older cases.  And
3   I like to move cases, get them resolved before they morph into
4   three-year-old cases.  My suggestion would be this.  I'm not so
5   sure if the two of you put your heads together, you might not
6   be able to come up with a mutually agreeable route toward
7   resolving this thing.  It may be by way of a joint submission.
8   So my suggestion would be that you consult with each other, I
9   would like to hear back from you within a couple of weeks.  You
10  can do that by way of correspondence.  Just by way of advising
11  us if you have reached an agreement, as to how this matter
12  would ultimately be resolved.  If you can't, if there's a
13  genuine disagreement on this question of remedy, then I would
14  want to know about it sooner rather than later so I could set
15  down a briefing schedule.  Two weeks seem doable?
16              MS. STOREY:  Yes, your Honor.
17              THE COURT:  All right.
18              MS. DUGAN:  Your Honor, this is Marianne Dugan.  I
19  actually don't know what my clients' position would be, we may
20  not agree with the government's position, we may want to have
21  relatively concise briefing on the merits, to bring out a
22  couple issues that came out on appeal, which I don't think your
23  Honor had an opportunity to look at the legal merits.
24              THE COURT:  Ms. Dugan, I will look at absolutely
25  anything with an open mind that comes in.  We now have had the

```
 1   Circuit speak to this, what is left of the merits of this case.
 2   There was filed a petition for rehearing en banc, which was
 3   promptly denied.  What merits are left here?
 4              MS. DUGAN:  Well, with all due respect to your
 5   Honor, the Court of Appeals had reviewed the APA, which is the
 6   likely success on the merits.  The court did not address a
 7   decision on the merits, and I may be nervy about this, but my
 8   clients have the right to try to, at best, to address the
 9   merits on the case.  I don't know that they're going to want me
10   to do that.  But that might be what they ask me to do.
11              THE COURT:  Well, when are you going to find out if
12   that's what they want you to do -- when do you think you will
13   know what your clients' intentions are?
14              MS. DUGAN:  I'm sure I could find that out very
15   quickly.
16              THE COURT:  Once again, it's an issue that I don't
17   have to decide, I don't have it in front of me.  Ms. Storey, do
18   you see any merits issues that are left on the table here?
19              MS. STOREY:  No, your Honor, we don't.
20              THE COURT:  Mr. McCrum, I assume you certainly
21   don't?
22              MR. McCRUM:  That's correct, your Honor.
23              THE COURT:  Then I'm going to want to know within
24   that same two-week time period what your client's intentions
25   are with respect to their possible attempt to continue to
```

```
 1   litigate their case on the merits.  All right?
 2           MS. DUGAN:  Yes.
 3           THE COURT:  All right, folks, then we'll hear from
 4   you within two weeks.
 5           MR. WOLFORD:  Your Honor, if I may add one point,
 6   this is Matt Wolford.  In light of the fact we got a certified
 7   letter in lieu of the mandate on this case, we assumed that one
 8   effect of that was to lift the stay on the Forest Plan case,
 9   and your Honor had directed at the hearing on May 5th of 2010,
10   where we agreed to suspend it.
11           THE COURT:  Which case was that again?
12           MR. WOLFORD:  It's called Pennsylvania Oil and Gas
13   Association and Allegheny Forest Alliance against the United
14   States Forest Service.
15           THE COURT:  Is that 08-162?
16           MR. WOLFORD:  Yes, 08-162.
17           THE COURT:  There was just a supplemental brief
18   filed in the case?
19           MR. WOLFORD:  Your Honor directed us to file that
20   within 20 days, which was suspended.  I think that 20 days, I
21   assumed it automatically reactivated -- which I think would run
22   later this week, so we filed this yesterday to bring it to the
23   court's attention today.  I think the government has only a
24   20-day response deadline.
25           THE COURT:  Was it previously indicated 20 days?
```

1        MR. WOLFORD: Yes.

2        THE COURT: I have to say I have not looked at the
3   case recently -- what are the issues in the POGAM case 08-162,
4   are they similar or divergent from the issues in Minard Run?

5        MR. WOLFORD: Divergent. There were procedural NEPA
6   problems. There was a question your Honor asked to have
7   briefed, assuming that the court agrees that NEPA violations
8   occurred, I think are the reasons your Honor postured it in
9   that way is because the Forest Service actually agreed in the
10  appeal's decision that they committed three NEPA violations.
11  Your Honor had requested -- we believe, assuming you find in
12  favor of the plaintiffs on both issues and perhaps on others,
13  what is the appropriate remedy -- is it vacating the entire
14  Forest Plan or is it something else. You asked that we address
15  that in a statutory, regulatory and case law fashion. Which is
16  how this thing was structured.

17       THE COURT: Which is what I have on my desk right
18  now. Ms. Storey, has my Deputy Clerk entered a response time
19  on this thing?

20       MS. STOREY: I don't believe so.

21       MR. WOLFORD: It was in the hearing transcript of
22  May 5th, 20 days.

23       THE COURT: I originally said 20 days?

24       MR. WOLFORD: I know you did.

25       THE COURT: Is that sufficient time, Ms. Storey,

```
 1    do you need more time than that?
 2              MS. STOREY:  Your Honor, would 30 days --
 3              THE COURT:  I was going to make it 30 days.  You got
 4    30 days to respond to that.  That's the POGAM case.  I have the
 5    Catalyst Energy status conference scheduled later for this
 6    morning.  What other cases -- is there a Seneca case?
 7              MS. STOREY:  Yes, your Honor.  I can give you the
 8    number.  It's 09-154.
 9              THE COURT:  Okay.  Mr. Wolford and Mr. McCrum, are
10    you involved in that case?
11              MR. WOLFORD:  No, your Honor.
12              MR. McCRUM:  No, your Honor.
13              THE COURT:  But you are, Ms. Storey?
14              MS. STOREY:  That's right.
15              THE COURT:  What is that case about, is it similar
16    to Minard Run?
17              MS. STOREY:  It's similar to Seneca and Minard Run.
18              THE COURT:  I'm going to go ahead and have my Deputy
19    Clerk set something -- what I'm trying to do is get all the
20    cases substantively related to Minard Run, get the parties on
21    the line and figure out where those cases are going in light of
22    the recent Third Circuit decision.  So it's POGAM, Seneca,
23    Catalyst, and Minard Run, is that right?
24              MS. STOREY:  Duhring is before a different district
25    judge.
```

```
 1              THE COURT:  Duhring is before Chief Judge Lancaster?
 2              MS. STOREY:  Correct.
 3              THE COURT:  I have POGAM, Seneca, Catalyst, and
 4  Minard Run, those are the only drilling cases I have, is that
 5  right?
 6              MS. STOREY:  That's correct.
 7              THE COURT:  All right.  I think that's all we can do
 8  today.  In that 14 days if you work something out earlier or
 9  become of the view you can't, let us know.  Similarly,
10  Ms. Dugan, if you find out something earlier than the 14 days,
11  there's nothing talismanic in waiting the full
12  14 days, let us know earlier if you know, all right?
13              MS. DUGAN:  Yes, your Honor.
14              THE COURT:  Thank you, counsel.
15
16              (Whereupon, at 9:11 a.m., the proceedings were
17  concluded.)
18
19                              - - -
20
21
22
23
24
25
```

## C E R T I F I C A T E

I, Ronald J. Bench, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Ronald J. Bench